Estate of Isaac Cassel, deceased.   Appeal of Walter S. Cassel for himself and as next friend of his sister, Rebecca C. Cassel, a minor, and of Mabel O. Cassel.

*Executors and administrators—Joint account—Mistake—Trustees.*

C. and K. were joint executors under a will which provided that one-half of the residue of the estate should go to C. as trustee for C.'s children, and the other half to K. as trustee for K.'s children.   C. was the owner of land subject to a dower fund payable after the decease of testator to the testator's heirs and legal representatives.   By mistake this fund was included in the executors' account, the money, however, represented by it was not in fact received by the executors, but remained in the hands of C.   The fund was lost by C. after the account of the executors had been fully settled.   *Held*, that C.'s children could not make K. account for the loss.

Argued Feb. 4, 1897.   Appeal, No. 8, Jan. T., 1897, by Walter S. Cassel et al., from decree of O. C. Montgomery Co., dismissing petition for citation.   Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Petition for citation.

The facts appear by the opinion of the court below, WEAND, J., as follows :

Isaac Cassel, of Towamencin township, Montgomery Co., Pa., deceased, left a last will in which he appointed Abraham Kulp and Christian D. Cassel his executors who filed a joint account which was confirmed without exception, showing a balance due the estate of $4,475.76.   As this was a joint account each executor became prima facie liable for the whole amount: Young's Appeal, 99 Pa. 74.   By the will it was among other things directed as follows, " and all my estate not otherwise disposed of is converted into money shall be equally divided in two shares, and paid as follows, viz : one equal share to the children of Elizabeth intermarried with Abram. Kulp said Abram. Kulp to take charge of share and pay the individual shares to the children of Elizabeth as they arrive at full age without interest. The other share to be paid to the children of my daughter Lovina Cassel deceased, late the wife of Christian D. Cassel and the said Christian D. Cassel to take charge of said share and pay

the individual shares to the children of Lovina deceased as they arrive at full age, without interest." The said Christian D. Cassel is now deceased and his children claim that they have never received from him their said shares but that the entire balance of said estate went into the hands of the said Abraham Kulp who still has it. It is asked that an order may be made on said Kulp compelling him to pay the petitioners their said shares. Abraham Kulp, in his answer, denies that the entire balance of said estate came into his hands and alleges that Christian D. Cassel, respondent's coexecutor, retained, himself, the share that was coming to the children of his deceased wife, and respondent had no control over the same. This answer standing alone would be insufficient to defeat the petition, for it only alleges that Kulp had not received the money, but the filing of the joint account fixes his liability unless other circumstances relieved him. If he actually received the whole fund he can only discharge himself from liability by showing payment to the trustee who was to receive it, and the fact that Cassell was both executor and trustee cannot alter the case, for until the executors have done some act showing that the fund left their hands as executors and passed to them as trustees they are still liable in the former capacity. He however claims that the whole fund never came to his hands, and that half of it was retained by Cassell as trustee for his children. If this is correct the petition must be refused, for whilst ordinarily it is quite true that the filing of a joint account is an admission of joint liability for the balance in hand, yet it by no means follows that such joint liability is a continuing obligation which remains fixed and established as a judicial decree, and without regard to subsequent circumstances : Young's Appeal, supra. In the case cited three executors were appointed upon certain trusts. They filed a joint account showing a cash balance in their hands. One of them never had any of the estate in his hands, and, on the insolvency of the other executor who had the fund, the estate of the other, under the circumstances of the case was not held responsible. The question in this case therefore arises as to whether Kulp has shown such a condition of affairs as to afford him relief.

The whole difficulty arises from the fact that the accountants ignorantly but innocently included in their settlement of Isaac

Cassel's estate that which did not belong there.   Christian D. Cassel was the owner of a tract of land subject to a dower fund of $3,000, payable in six months after the decease of Isaac Cassel and Elizabeth, his wife, to the heirs and legal representatives of the said Isaac Cassel.   After the decease of Cassel and wife, Kulp and Cassel, as executors of Cassel, Christian D. Cassel, administrator of Lovina Cassel, his wife, a daughter of Isaac Cassel, and Isaac R. Cassel and Salome Ludwig, children of Lovina Cassel, released said dower.   No money actually passed; the two executors agreeing that the amount should be included as part of the assets of the estate of Isaac Cassel, deceased, and this explains why the balance as shown by the account is $4,475.76, whereas only $1,475.76 is the balance after deducting credits which actually came into the hands of the executors. Under the terms of the will each executor was entitled to receive one half of the balance as trustee for his children, and an account was then prepared for them by a competent scrivener, and a settlement made.   If Cassel had actually paid the dower he would as trustee immediately be entitled to demand a return of it equal to one half of the balance as shown by the account. Considering this as useless, they agreed to the settlement as stated; i. e. as if the money had been actually paid and by the settlement divided between them.   Cassel thus received the full share due him as a trustee for his children.   This left Cassel overpaid by $762.12 for which he was indebted to Kulp although the amount agreed upon was $733.   To secure this with other money due Kulp he gave the latter a mortgage.   It is agreed that Kulp thus secured his own claims against Cassel by releasing the dower and thus giving him opportunity to secure himself by lien.   As we discover no evidence of fraud in the case we cannot see how these transactions between Kulp and Cassel affecting their private matters have anything to do with the case.   The one question is : can the arrangement with reference to the dower be considered just as if the money had been paid over and Cassel's share then returned to him?   If it was part of Isaac Cassel's estate, Christian D. Cassel had as much right as Kulp to its possession, and as trustee he had an undoubted right to receive one half.   In this proceeding all parties are treating it as properly in the control of the executors of Isaac R. Cassel, and in fact it passed to the same persons as

did the balance under the will.   Kulp and Cassel were brothers-in-law, and the decedent evidently had great confidence in them, as appears by the terms of the will, Kulp therefore had no reason to suppose that Cassel would be unfaithful.   He had no standing to ask for security, and the release of the dower made no difference in Cassel's condition up to that time. ˙ It must also be kept in view that the petitioners are claiming their share of the estate of Isaac R. Cassel.   They are now in effect showing that their own father was unfaithful in his trust.

The account in the estate was filed January 27, 1890, and the settlement was made April 1, 1890, or before, according to the mortgage given to secure Kulp.   The petition for the order on Kulp was filed March 19, 1896.   To disturb the settlement made in good faith in 1890, would, we think, be an injustice to Kulp, who apparently acted in good faith and under advice. We therefore refuse the petition.

May 25, 1896.   The petition is dismissed.

*Error assigned* was in dismissing petition.

*Louis M. Childs*, with him *Montgomery Evans, James B. Holland* and *John M. Dettra*, for appellants.—The children of Isaac Cassel adopted the construction that the fund was payable to the executors, and relinquished all claim to it.   The executors having treated it throughout as an asset and included it in their inventory and account, and having had it in their power and control, they are estopped from alleging that it was not an asset, and a construction by this court is unnecessary: Sprenkle's App., 1 Walker, 365.

The charge being a safely secured asset of the estate, its satisfaction by Abraham Kulp and his coexecutor and the acceptance by them in its stead of the unsecured liability of a man engaged in a hazardous business, rendered each personally liable for the money, even in the absence of any legal or actual fraud: Baldwin's App., 3 W. N. C. 73; Swoyer's App., 5 Pa. 377; Lobingrer v. Mechling, 2 Am. L. J. 256; Ringgold v. Ringgold, 1 Har. & G. (Maryland), 11; Pim v. Downing, 11 S. & R. 66; Hengst's App., 24 Pa. 413; Wilson's App., 115 Pa. 95; Jones's App., 8 W. & S. 143.

˙ The filing of the joint account by Kulp and Cassel in which

they charged themselves with this fund, made them jointly liable for it: Ducommun's App., 17 Pa. 268; Bunting's App., 4 W. & S. 469.

The right of cestui que trust to follow trust property or moneys in the hands or possession of those who have received them with knowledge of the trust, is so well established and understood as to render it almost unnecessary to cite authorities: 27 Am. & Eng. Ency. of Law, 250; Austin v. Willson, 21 Ind. 252; Frazier v. Erie Bank, 8 W. & S. 18.

*J. P. Hale Jenkins*, for appellee.—The account filed was a joint account, and, therefore, both executors were prima facie liable for the whole amount.   But this liability is not a continuing one; if, subsequently to the filing of the account and its confirmation by the court, they performed that act required by them under the terms of the will, viz.: divided the estate between the two trustees appointed by the will, their liability as joint executors ceased, and as separate trustees began: Young's App., 99 Pa. 74.

Even where there are cotrustees, it must be affirmatively shown that the one whom it is sought to have charged with losses sustained must have consented to the misapplication of the money, or it must be made out to a reasonable probability that the loss was caused by his neglect.   That degree of care only is required which an ordinarily prudent man in his own business would take: Neff's App., 57 Pa. 91; Lightcap's App., 95 Pa. 455; Irwin's App., 35 Pa. 294; Brown's App., 1 Dallas, 311; Sterrett's App., 2 P. & W. 419; Nyce's Est., 5 W. & S. 254; Calhoun's Est., 6 Watts, 185; Newkirk's Appeal, 3 Grant, 323; Fesmire's Est., 134 Pa. 67; Barker's Est., 159 Pa. 518; Witmer's App., 87 Pa. 120; Webb's Est., 165 Pa. 330; Wilson's App., 115 Pa. 95; McNair's App., 4 Rawle, 148; Eyster's App., 16 Pa. 372; Bradley's App., 89 Pa. 514; Verner's Est., 6 Watts, 250; Bruner's App., 57 Pa. 46; Jack's App., 94 Pa. 367.

OPINION BY MR. JUSTICE WILLIAMS, March 1, 1897:

Christian Cassel and Abraham Kulp were the executors of the will of Isaac Cassel deceased.   They settled their account in 1890 and it was finally confirmed.   Christian Cassel is now

deceased, and this is an effort on the part of his children to hold Kulp responsible for money that their father should have preserved for them but did not.  The foundation for the claim now made by the appellant is in a clear mistake made by the executors in the settlement of their account.  They included in it an item of $3,000 which really did not belong there.  The mistake was as the learned judge of the orphans' court says "ignorantly but innocently made," and it ought in fairness to impose no liability on any person.  The money represented by this item was not in fact received by Kulp, or by the executors but remained in the hands of Christian Cassel the father of the appellants as its trustee.  It was lost by him after the account of the executors had been fully settled.  Under such circumstances we agree with the learned judge that "to disturb the settlement made in good faith in 1890, would be an injustice to Kulp, who apparently acted in good faith and under advice."

The decree is therefore affirmed for the reasons given in the opinion of the court below.